IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **DIAGNOSTIC AFFILIATES OF NORTHEAST HOU, LLC D/B/A 24 HOUR COVID RT-PCR LABORATORY** § § § §<br>*Plaintiff*, §<br>§  C.A. No. _____<br>**v.** §<br>§<br>**CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY LLC., SUPERIOR HEALTHPLAN COMMUNITY SOLUTIONS, INC., SUPERIOR HEALTHPLAN NETWORK, SUPERIOR HEALTHPLAN, INC., WELLCARE OF TEXAS, INC., WELLCARE NATIONAL HEALTH INSURANCE COMPANY, AND CELTIC INSURANCE COMPANY** § § § § § § § § § § § §<br>*Defendants.* | |

## ORIGINAL COMPLAINT AND JURY DEMAND

Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory ("24 Hour Covid" or "Plaintiff") by and through its attorneys, brings its Original Complaint against **CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC., SUPERIOR HEALTHPLAN COMMUNITY SOLUTIONS, INC., SUPERIOR HEALTHPLAN NETWORK, SUPERIOR HEALTHPLAN, INC., WELLCARE OF TEXAS, INC., WELLCARE NATIONAL HEALTH INSURANCE COMPANY** and **CELTIC INSURANCE COMPANY** (collectively referred to as "Centene" or Defendants") and allege as follows:

## NATURE OF THE CLAIMS

1. 24 Hour Covid is a CLIA certified high complexity laboratory that has requested emergency use authorization under Section 564 of the Federal Food, Drug, and Cosmetic Act; therefore, has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.[1] At the height of the pandemic 24 Hour Covid operated seven specimen collection sites located across the States of Texas and Louisiana, and partnered with employers and independent school districts across Texas to render Covid Testing services to employees, teachers, students, and other staff members.[2]

2. Centene provides health insurance and/or benefits to members of many different types of private health plans either insured or administered by Centene pursuant to a variety of health benefit plans and policies of insurance, including employer-sponsored benefit plans and individual health benefit plans.

3. Centene also serves in the trusted role of third-party claims administrator for self-funded health plans.

4. Under ordinary circumstances, not all health plans insured or administered by Centene offer its members access to out-of-network ("OON") providers and facilities. However, pursuant to Section 6001 of the Families First Coronavirus Response Act (the "FFCRA"), as amended by Section 3201 of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), all group health plans and health insurance issuers offering group or individual private health insurance coverage are required to provide benefits for certain items and services

---

[1] See 21 U.S.C. § 360bbb–3.
[2] Humble ISD Expands Options for Student Covid Testing (https://www.humbleisd.net/covid19studenttesting); Humble ISD expands free COVID-19 testing options to provide easier access for students (https://communityimpact.com/houston/lake-houston-humble-kingwood/education/2021/01/07/humble-isd-expands-free-covid-19-testing-options-to-provide-easier-access-for-students/).

related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of cost-sharing, prior authorization, or other medical management requirements when such items or services are furnished on or after March 18, 2020, for the duration of the COVID-19 public health emergency regardless of whether the Covid Testing provider is an in-network or OON provider.[3]

5.      Furthermore, Section 3202(a) of the CARES Act provides that all group health plans and health insurance issuers covering Covid Testing items and services, as described in Section 6001 of the FFCRA, must reimburse OON providers in an amount that equals the cash price for such Covid Testing services as listed by the OON provider on its public internet website or to negotiate a rate/amount to be paid that is less than the publicized cash price.

6.      Here, Centene has intentionally disregarded its obligations to comply with its requirements to cover Covid Testing services without the imposition of cost-sharing and other medical management requirements pursuant to Sections 6001 of the FFCRA and, in the instances Plaintiff is reimbursed for its Covid Testing services, has failed to reimburse Plaintiff in accordance with Section 3202(a) of the CARES Act. These violations are made to financially benefit Centene.

---

[3] *See* CMS FAQ Parts 42, 43, and 44, The FFCRA and the CARES Act.

## PARTIES

7. 24 Hour Covid is a limited liability company organized under the laws of the State of Texas, with its company headquarters located at 22001 Northpark Drive, Suite 221, Kingwood, Texas 77339. 24 Hour Covid has lawful standing to bring in all claims asserted herein.

8. Defendant Centene Corporation is a publicly traded managed care company based in St. Louis, Missouri, doing business through its subsidiaries. It serves as an intermediary for government-sponsored and privately insured health care programs. Centene Corporation may be served with process by serving its principal place of business at Global Headquarters, Centene Corporation, Centene Plaza, 7700 Forsyth Boulevard, St. Louis, MO 63105.

9. Defendant Centene Management Company, LLC., is a Foreign Limited Liability Company (LLC) doing business in Texas. Defendant Centene Management Company, LLC is a TPA (third-party administrator) for managed health care programs, with a principal place of business at 1021 Main Street, Suite 1150, Houston, Texas and may be served with process by serving its registered agent for service at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

10. Defendant Superior HealthPlan Community Solutions, Inc., is a Domestic For-Profit Corporation, doing business in Texas. Superior HealthPlan is a managed health care organization. Superior HealthPlan Community Solutions, Inc., may be served with process by serving its registered agent for service at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

11. Defendant Superior HealthPlan Network is a Foreign For-Profit Corporation, doing business in Texas. Superior HealthPlan Network is a managed health care organization. Superior

HealthPlan Network., may be served with process by serving its registered agent for service at Superior HealthPlan Network, 5900 E. Ben White Blvd., Austin, Texas 78741-7502.

12. Defendant Superior HealthPlan, Inc., is a Domestic For-Profit Corporation, doing business in Texas. Superior HealthPlan, Inc. is a managed health care organization with TPA Authority and may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

13. Defendant WellCare of Texas, Inc. is a Domestic For-Profit Corporation doing business in Texas. WellCare of Texas, Inc. is a managed health care organization and may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

14. Defendant WellCare National Health Insurance Company, is a Domestic For-Profit Corporation doing business in Texas. WellCare National Health Insurance Company. is a managed health care organization and may be served with process by serving its registered agent at CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

15. Celtic Insurance Company is a Foreign For-Profit Corporation doing business in Texas. Celtic Insurance Company is a managed health care organization for insurance and can be served with process by serving its registered agent at United States Corporation Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

16. This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as 24 Hour Covid asserts federal claims against Defendants in Count I under the FFCRA and the CARES Act.

17. The Court has personal jurisdiction over the parties because 24 Hour Covid submits to the jurisdiction of this Court, and Defendants systemically and continuously conduct business in the State of Texas and otherwise have minimum contacts with the State of Texas sufficient to establish personal jurisdiction over them.

18. A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal jurisdiction satisfies due process under the United States Constitution.[4] The Texas long-arm statute, extends jurisdiction to the limits of federal due process.[5] Thus a plaintiff in a diversity action in federal court in Texas need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.[6]

19. The Supreme Court in *Burger King Corp. v. Rudzewicz*, stated "where the defendant "deliberately" has *engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed

---

[4] *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir.2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir.2007).
[5] *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *Gonzalez v. Bank of America Ins. Servs., Inc.,* 454 Fed.Appx. 295, 299–300 (5th Cir.2011), citing *Stroman Realty, Inc. v. Antt,* 528 F.3d 382, 385 (5th Cir.2008).
[6] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir.2000); *Moncrief Oil Int'l, Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir.2007).

himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[7]

20. Each Centene entity has intentionally and willfully conducted business in the forum state and created a continuous obligation with themselves and the residents in the State. All of the Centene entities named as Defendants in this Complaint with exception to Centene Corporation have consciously registered their organization with the Texas Department of Insurance ("TDI") as either an authorized Third-Party Administrator, Basic Health Maintenance Organization, or licensed insurer.[8] TDI's licensing and registration office incorporates and licenses domestic authorized carriers, and admits foreign insurers, licensing them to operate in the Texas. TDI's mission is to protect insurance consumers by regulating the insurance industry fairly and diligently" thus by registering with TDI, an organization is aware that they will be subject to the rules and regulations of TDI, as well as the benefits, protections and possible burdens if found in violation of TDI's guidelines. It is not unreasonable or unforeseen that these seven Centene Defendant-entities would be required to resolve disputes in that forum state they purposely requested licensing to do business in.

21. Beyond establishing an intentional contact with TDI, each Centene Defendant-entity obtained registered agents in the forum state, as well as created continuing obligations by entering contractual relationships with plan members to provide health insurance and handle, process, and/or adjudicate medical claims for members in the forum state. Therefore, since these Centene Defendant-entities purposely directed their business activity towards the forum state, it is

---

[7] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)
[8] *See* Exhibit A (Texas Department of Insurance Licensing Information for each Centene Defendant with Exception to Centene Corporation).

not unpredictable nor foreseen that these Centene Defendant-entities would be required to litigate in that state.

22. Venue is appropriate under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. 24 Hour Covid alleges that Centene violated the FFCRA and the CARES Act within the District Court of Texas.

## STATEMENT OF FACTS

### I. BACKGROUND AS TO THE FFCRA AND THE CARES ACT

23. Pursuant to Section 319 of the Public Health Service Act, on January 31, 2020, the Secretary of Health and Human Services ("HHS") issued a determination that a Public Health Emergency exists and has existed as of January 27, 2020, due to confirmed cases of COVID-19 being identified in this country.[9]

24. On March 13, 2020, the President issued Proclamation 9994 declaring a National Emergency concerning the COVID-19 outbreak with a determination that a national emergency exists nationwide, pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

25. To facilitate the nation's response to the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act to, amongst other things, require group health plans and health insurance issuers offering group or individual health insurance coverage to: (i) provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of any cost-sharing requirements (*i.e.* deductibles, copayments, and coinsurance) or prior authorization or other medical management requirements;[10] and (ii) to

---

[9] *See* https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (Determination that a Public Health Emergency Exists).
[10] Pub. L. No. 116-127 (2020).

reimburse any provider for COVID-19 diagnostic testing an amount that equals the negotiated rate or, if the plan or issuer does not have a negotiated rate with the provider (*e.g.* 24 Hour Covid), the cash price for such service that is listed by the provider on its public website in accordance with 45 CFR § 182.40.[11]

26. To further clarify to issuers and health plans their legal expectations when processing a claim for Covid Testing in accordance with the FFCRA and the CARES Act, the Department of Labor ("DOL"), the Department of Health and Human Services ("HHS"), and the Department of the Treasury (the "Treasury") (collectively, the "Departments") jointly prepared and issued a series of Frequently Asked Questions ("FAQs") to address any stakeholder questions or concerns pertaining to the proper adjudication of Covid Testing claims. <u>The following FAQs summarize the health plan and issuers' obligations as it pertains to covering and paying for Covid Testing services during the public health emergency</u>:

> **The Departments FAQ, Part 42, Q1**: *Which types of group health plans and health insurance coverage are subject to section 6001 of the FFCRA, as amended by section 3201 of the CARES Act?*
>
> Section 6001 of the FFCRA, as amended by section 3201 of <u>the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage</u> (including grandfathered health plans as defined in section 1251(e) of the Patient Protection and Affordable Care). The term "group health plan" includes both insured and self-insured group health plans. It includes private employment-based group health plans (ERISA plans), non-federal governmental plans (such as plans sponsored by states and local governments), and church plans.
>
> "Individual health insurance coverage" includes coverage offered in the individual market through or outside of an Exchange, as well as student health insurance coverage (as defined in 45 CFR 147.145).[12]
>
> **The Departments FAQ, Part 42, Q3**: *What items and services must plans and issuers provide benefits for under section 6001 of the FFCRA?*
>
> Section 6001(a) of the FFCRA, as amended by Section 3201 of the CARES Act, requires <u>plans and issuers to provide coverage for</u> the following items and services:

---

[11] Pub. L. No. 116-136 (2020).
[12] *See* https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf.

(1) <u>An in vitro diagnostic test</u> as defined in section 809.3 of the title 21, Code of Federal Regulations, (or its successor regulations) for the detection of SARS-CoV-2 or the <u>diagnosis of COVID-19</u>, and the administration of such a test, that - …

      B. The developer has requested, or intends to request, emergency use authorization under section 564 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bbb-3), unless and until the emergency use authorization request under such section 564 has been denied or the developer of such test does not submit a request under such section within a reasonable timeframe;…[13]

**The Departments FAQ, Part 42, Q6**: *May a plan or issuer impose any cost-sharing requirements, prior authorization requirements, or other medical management requirements for benefits that must be provided under section 6001(a) of the FFCRA, as amended by section 3201 of the CARES Act?*

<u>No</u>. Section 6001(a) of the FFCRA provides that plans and issuers shall not impose any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization requirements, or other medical management requirements for these items and services. <u>These items and services must be covered without cost sharing when medically appropriate for the individual, as determined by the individual's attending healthcare provider in accordance with accepted standards of current medical practice</u>.[14]

**The Departments FAQ, Part 42, Q7**: *Are plans and issuers required to provide coverage for items and services that are furnished by providers that have not agreed to accept a negotiated rate as payment in full (i.e., out-of-network providers)?*

<u>Yes</u>. Section 3202(a) of the CARES Act provides that a plan or issuer providing coverage of items and services described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows: …

   2. <u>If the plan or issuer does not have a negotiated rater with such provider, the plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or the plan or issuer may negotiate a rate with the provider for less than such cash price</u>…[15]

**The Departments FAQ, Part 43, Q9**: *Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?*

The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with <u>section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website.</u> In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore, the statute generally precludes balance billing for COVID-19 testing. However, section 3202(a) of the CARES Act does not preclude

---

[13] *Id.*
[14] *Id.*
[15] *Id.*

balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.[16]

**The Departments FAQ, Part 44, Q1**: *Under the FFCRA, can plans and issuers use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19?*

No. The FFCRA prohibits plans and issuers from imposing medical management, including specific medical screening criteria, on coverage of COVID-19 diagnostic testing. Plans and issuers cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests.

When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered without cost sharing, prior authorization, or other medical management requirements.[17]

**The Departments FAQ, Part 44, Q3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*

Yes. As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing. If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drive-through" site, and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."[18]

**The Departments FAQ, Part 44, Q5**: *What items and services are plans and issuers required to cover associated with COVID-19 diagnostic testing? What steps should plans and issuers take to help ensure compliance with these requirements?*

… Plans and issuers should maintain their claims processing and other information technology systems in ways that protect participants, beneficiaries, and enrollees from inappropriate cost sharing and should document any steps that they are taking to do so…[19]

---

[16] *See* https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf; *See also* FAQ Part 43 Q12: … Because the Departments interpret the provisions of section 3202 of the CARES Act as specifying a rate that generally protects participants, beneficiaries, and enrollees from balance billing for a COVID-19 test (see Q9 above), the requirement to pay the greatest of three amounts under the regulations implementing section 2719A of the PHS Act is superseded by the requirements of section 3202(a) of the CARES Act with regard to COVID-19 diagnostic tests that are out-of-network emergency services. For these services, the plan or issuer must reimburse an out-of-network provider of COVID-19 testing an amount that equals the cash price for such service that is listed by the provider on a public website, or the plan or issuer may negotiate a rate that is lower than the cash price.
[17] *See* https://www.cms.gov/files/document/faqs-part-44.pdf.
[18] *Id.*
[19] *Id.*

27. To supplement the FAQs publicized by the Departments, the Internal Revenue Service (the "IRS") issued Notice 2020-15 pertaining to high deductible health plans ("HDHPs") and expenses related to COVID-19 to provide members of HDHPs (including those HDHPs administered by the 90 Degree Benefits TPA) the confidence that Covid Testing will be covered, in full, by their HDHP. Notice 2020-15 states as follows:

> [d]ue to the unprecedented public health emergency posed by COVID-19, and the need to eliminate potential administrative and financial barriers to testing for and treatment of COVID-19 [emphasis added], a health plan that otherwise satisfies the requirements to be an HDHP under section 223(c)(2)(A) will not fail to be an HDHP merely because the health plan provides medical care services and items purchased related to testing for and treatment of COVID-19 prior to the satisfaction of the applicable minimum deductible.

28. In addition to the federal guidance publicized by the Departments, the Texas Department of Insurance ("TDI") issued Commissioner's Bulletin # B-0017-20, which also pertains to coverage for COVID-19 testing and network adequacy. In this Bulletin, TDI mandates exclusive provider networks ("EPOs") and health maintenance organizations ("HMOs") to comply with the Covid Testing adjudication requirements of the FFCRA and the CARES Act, and "instructs health plans to pay a provider's negotiated rate or, if a health plan does not have a negotiated rate with the provider, pay the provider's publicly available cash price for testing [emphasis added]."[20]

---

[20] In an inquiry posed by 24 Hour Covid to TDI pertaining to the applicability of Commissioner's Bulletin #B-0017-20 to PPO and POS plans, TDI states the following: "Yes, it is TDI's position that PPO and POS plans must also comply with FFCRA and the 'CARES Act' … Commissioner's Bulletin #B-0017-20 made it expressly clear that in-network based plans, "insurers offering exclusive provider networks (EPOs) and health maintenance organizations (HMOs)… fall within the federal definitions for group health plans or health insurance issuers offering group or individual health insurance coverage." Presumably, the purpose of the bulletin was to expressly clarify for network-based plans such as EPOs and gated HMO plans our expectation to protect consumers regardless of network affiliation, as contemplated by the CARES Act and by Texas' laws. PPO and EPO issuers are subject to but not limited to Texas Insurance Code (TIC) Chapter 1301. HMOs may issue POS plans as required under TIC Chapter 1273. As PPO and POS plans are captured under the terms "issuer", "HMO", "group health plans", "health insurance issuers", and "individual health insurance coverage"; PPO and POS plans are not excluded from compliance."

## II. DEFENDANTS NON-COMPLIANCE WITH CONGRESSIONAL REQUIREMENTS

29. Centene Management Company, LLC and Superior HealthPlan, Inc are health benefits company licensed with the Texas Department of Insurance ("TDI") that provide full third-party claims administration services to health plans in the State Texas.

30. WellCare of Texas, Superior HealthPlan Community Solutions, as well as Superior HealthPlan Inc, are licensed under TDI as basic health maintenance organizations that provide health insurance and/or benefits of many different types of private health plans.

31. Celtic Insurance, Superior HealthPlan Network, and WellCare National Health Insurance Company are all TDI licensed insurance companies that provide health insurance and/or benefits of many different types of private health plans to members in the State of Texas.

32. Centene Corporation is a healthcare organization and the parent company of above-mentioned entities. Through its subsidiaries, Centene provides a broad range of health plans including but not limited to, federal and state mandated health plans as well as comprehensive plans for individuals and families.

33. Members of Defendants' health plans received Covid Testing services from 24 Hour Covid that were determined to be medically necessary by a medical practice/physician prior to 24 Hour Covid providing any Covid Testing services.

34. After the Covid Testing services were provided to members of Defendants' health plans, 24 Hour Covid timely submitted claims to Centene for payment. 24 Hour Covid provided such services in good faith, and, as such, reasonably expected a fair and timely payment in return from Centene. As detailed above, Section 6001 of the FFCRA requires mandatory coverage of Covid Testing services and Section 3202(a) of the CARES Act requires health plans and issuers

to pay OON Covid Testing providers either: (i) cash prices as publicized by the providers or (ii) a negotiated amount.

35. 24 Hour Covid has attempted repeatedly to work with Centene in order to have all Covid Testing claims properly processed and adjudicated in compliance with the FFCRA and CARES Act. Critically, despite the fact that Section 3202(a) of the CARES Act places the onus on private health plans to negotiate rates with OON providers for Covid Testing reimbursement or otherwise pay OON providers their cash prices as publicized on their websites, 24 Hour Covid solely made every good faith effort to engage Centene to negotiate. Centene did not respond to a single offer for negotiation made by 24 Hour Covid

36. As detailed below, 24 Hour Covid exhausted every option to attempt to negotiate with Centene prior to bringing this action. The following is a timeline of 24 Hour Covid's good faith efforts to attempt to negotiate and resolve all outstanding issues with Centene:

   a. Letter to Centene's Legal Department and Registered Agent, dated March 14, 2022: Notice of Improper Denial of Covid Testing Claims; Request to Re-Adjudicate MCO Members' COVID-19 Testing Claims in Accordance with Texas Medicaid Requirements;[21]

   b. Letter to Centene's Legal Department and Registered Agent, dated March 15, 2022: Notice of Improper Denial of Covid Testing Claims; Request to Re-Adjudicate MCO Members' COVID-19 Testing Claims in Accordance with Texas Medicaid Requirements;[22]

   c. Letter to Centene's Legal Department and Registered Agent, dated March 21, 2022: Notice of Improper Denial of Covid Testing Claims; Request to Re-Adjudicate MA Plan

---

[21] *See* Exhibit B (Letter to Centene's Legal Department and Registered Agent, dated March 14, 2022: Notice of Improper Denial of Covid Testing Claims; Request to Re-Adjudicate MCO Members' COVID-19 Testing Claims in Accordance with Texas Medicaid Requirements).
[22] *See* Exhibit C (Letter to Centene's Legal Department and Registered Agent, dated March 15, 2022: Notice of Improper Denial of Covid Testing Claims; Request to Re-Adjudicate MCO Members' COVID-19 Testing Claims in Accordance with Texas Medicaid Requirements).

    Members' COVID-19 Testing Claims in Accordance with Federal Medicare Requirements;[23]

  d. Letter to Centene's Legal Department, dated July 19, 2022: Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements;[24] and

  e. Letter to Centene's Legal Department and Registered Agent, dated September 26, 2022: LAST AND FINAL Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements.[25]

37. In addition to sending numerous letters to Centene, 24 Hour Covid took steps to discover Centene's outside counsel, who was regularly used in their disputes, in hopes of gaining communication with Centene in order to amicably resolve this matter. 24 Hour Covid made the following attempts:

  a. Email Correspondence to Gemma Rose Galeoto and L. Bradley Hancock of Holland and Knight Law Firm, Centene's outside counsel, dated July 19, 2022: Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements;[26] and

  b. Email Correspondence to Gemma Rose Galeoto and L. Bradley Hancock of Holland and Knight Law Firm, Centene's outside counsel, dated September 26, 2022: LAST AND

---

[23] *See* Exhibit D (Letter to Centene's Legal Department and Registered Agent, dated March 21, 2022: Notice of Improper Denial of Covid Testing Claims; Request to Re-Adjudicate MA Plan Members' COVID-19 Testing Claims in Accordance with Federal Medicare Requirements).

[24] *See* Exhibit E (Letter to Centene's Legal Department, dated July 19, 2022: Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements).

[25] *See* Exhibit F (Letter to Centene's Legal Department and Registered Agent, dated September 26, 2022: LAST AND FINAL Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements).

[26] *See* Exhibit G (Email Correspondence to Gemma Rose Galeoto and L. Bradley Hancock of Holland and Knight Law Firm, Centene's outside counsel, dated July 19, 2022: Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements).

FINAL Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements.[27]

38. 24 Hour Covid clearly attempted to work in good faith with Centene, but, unfortunately, no good deed goes unpunished. Not only has Centene not reciprocated 24 Hour Covid's efforts, but <u>Centene has commenced with denying nearly half of the Covid Testing claims submitted by 24 Hour Covid</u>. Centene has and continues to act in bad faith.

39. Centene has failed to cover Covid Testing services in compliance with Section 6001 of the FFCRA and reimburse 24 Hour Covid in compliance with Section 3202(a) of the CARES Act. Through its failure to comply with these strict requirements, it has left numerous patients financially responsible for the balance between the amounts paid by the Defendants and the billed amount/cash price. The manner in which Centene's members' Covid Testing claims is in complete conflict with Congress and the Departments' intentions that no covered individual is to ever be left financially responsible for Covid Testing services as it pertains to their cost-sharing and balance-billing obligations. [28]

---

[27] *See* Exhibit H (Email Correspondence to Gemma Rose Galeoto and L. Bradley Hancock of Holland and Knight Law Firm, Centene's outside counsel, dated September 26, 2022: LAST AND FINAL Demand to Re-Adjudicate Health Plan's Members' COVID-19 Testing Claims in Accordance with FFCRA and the CARES Act Requirements).

[28] The Departments FAQ, Part 44, Q9:
**Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?**
The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. <u>Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due</u>.

## CAUSES OF ACTION

## STANDING TO PURSUE A CLAIM UNDER THE FFCRA AND CARES ACT

40. 24 Hour Covid has standing to sue under the FFCRA and the CARES Act. The Court in *Diagnostic Affiliates of Northeast Hou, LLC v. United Healthcare Services, Inc. et al* concluded there is an implied private right of action to enforce the provisions of the FFCRA and CARES Act reimbursement requirement.[29] The Court, to determine this, used the rubric set out by the Supreme Court in *Cort v. Ash* [30], along with *Touche Ross & Co. v. Redington*[31] to determine whether Congress intended a private cause of action in drafting the FFCRA and the CARES Act.

41. The Court considering the four factors set out in *Cort* and giving the greatest weight to the first 3 factors as most indicative of Congress's intent, concluded 24 Hour Covid established the very heavy burden to show that Congress intended a private enforcement in regard to the FFCRA and CARES Act, and overcame the presumption that Congress did not intend to create a private cause of action. [32] To summarize, 24 Hour Covid is a part of the class intended to benefit from the statute because: (i) of the mandatory reimbursement language in the statute; (ii) the evidence of legislative intent to create a private right of action since the FFCRA and CARES Act state clear rights to reimbursement; and (iii) the Court concluded a private right of action is consistent with the Legislative scheme since Congress mandated reimbursement.

---

[29] Diagnostic Affiliates of Northeast Hou, LLC. V. United Healthcare Services, Inc., et al., No. 2:21-CV-00131, (S.D. Tex. Jan. 19, 2022)
[30] *Cort v. Ash*, 422 U.S. 66, 78 (1975)
[31] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76 (1979)
[32] *Acara v. Banks*, 4701 F. 3d 569, 571 (5th Circ. 2006)(per curiam).

## COUNT I: VIOLATION OF THE FFCRA AND THE CARES ACT
**(*Against All Defendants*)**

42. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43. The Covid Testing services that 24 Hour Covid provided to members of Centene's health plans administered by Centene constitute as in vitro diagnostic products for the detection of COVID-19, as provided by Section 6001 of the FFCRA.

44. 24 Hour Covid is an OON laboratory and did not have a negotiated rate with Centene for the provision of Covid Testing services despite 24 Hour Covid's multiple attempts to amicably work with Defendants in good faith.

45. In compliance with the CARES Act, 24 Hour Covid posted its cash prices for Covid Testing services on its public website.

46. Under section 3202(a)(2) of the CARES Act, if a health plan does not have a negotiated rate with a provider, such as 24 Hour Covid, for providing Covid Testing services, the health plan is obligated to pay the provider its posted cash price for providing those services.

47. By reason of the foregoing, 24 Hour Covid has been injured.

48. Based on the above, 24 Hour Covid is entitled to judgment against Centene in an amount to be determined at the trial of this matter, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER

Plaintiff demands judgment in its favor against the Defendants as follows:

1. Awarding 24 Hour Covid an amount of damages to be determined at the trial of this matter, which amount is no less than $4,081,733.34.[33]

2. Declaring that the Defendants have breached the FFCRA and the CARES Act regarding the coverage and reimbursement of the Covid Testing service claims submitted by 24 Hour Covid, as well as awarding injunctive and declaratory relief to prevent Centene's continuous actions detailed herein;

3. All costs and expenses associated with this lawsuit, including, but not limited to, court costs and attorneys' fees; and

4. For such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Ebad Khan
Ebadullah (Ebad) Khan
Federal Bar No. 2810999
State Bar No. 2409265
ekhan@24hourcovid.com
22001 Northpark Drive, Suite 221
Kingwood, Texas 77339
(281) 319.8306 Direct
(281) 605.6690 Facsimile

*Attorney for Plaintiff*

---

[33] *See* Exhibit I (Centene Claims at Issue).